UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| JEAN A. LEWIS, | ) | No. ED CV 08-01443-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | (Social Security Case) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") properly

        considered the lay witness testimony;

2. Whether the ALJ properly considered the type, dosage, effectiveness and side effects of Plaintiff's medications;

3. Whether the ALJ properly considered the treating psychiatrist's opinion;

4. Whether the ALJ properly considered the opinions by Plaintiff's treating clinicians; and

5. Whether the ALJ posed a complete hypothetical question to the vocational expert.

(JS at 3.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE LAY WITNESS TESTIMONY WAS NOT IMPROPERLY REJECTED BY THE ALJ**

In her first issue, Plaintiff contends that her son,[1] Micah Lewis, completed a third party questionnaire which described limitations in Plaintiff's activities of daily living ("ADL's"), and that the ALJ improperly rejected this information.

The third party statement of Micah Lewis was contained in a "Function Report - Adult - Third Party." (AR 144-151.) In that report, Micah Lewis claimed that Plaintiff "must remain on the toilet for hours." (AR 145.) Further, he reported his observations that Plaintiff "can't complete tasks because she must use the toilet on

---

[1] Erroneously referred to as her daughter. (See JS at 3, et seq.)

random occasions." (AR 149.) Micah Lewis indicated that he lived with Plaintiff. (AR 144.)

The ALJ rejected Micah Lewis's statements, finding them only credible to the extent that Plaintiff can do the work as found by the ALJ in his decision. The ALJ rejected these statements because they were not given under oath and appeared to be no more than,

> "... a parroting of the subjective complaints already testified to by the [Plaintiff]. The repetition of the [Plaintiff's] subjective complaints through the [son] does not make them any more credible. The [Plaintiff's] [son] is not a medical professional and as a lay witness [he] is not competent to make a diagnosis or argue the severity of the [Plaintiff's] symptoms in relation to her ability to work. Most importantly, [his] statements are not supported by the clinical or diagnostic medical evidence that is discussed more thoroughly above."

(AR 53.)

**A.   Analysis.**

Lay witness statements are considered "other sources" under Social Security regulations, and are viewed as competent evidence. (20 C.F.R. §404.1513(d)(4). Plaintiff is correct in pointing out that the competence of such evidence is not related to whether or not it is given under oath, and the Commissioner's argument in the JS that the lay witness statements should be depreciated because they are not given under oath is rejected by the Court.

For reasons to be set forth, the Court concludes that while the ALJ's reasons for discounting the statement of Plaintiff's son are not

sustainable, any error must be considered harmless. (See Stout v. Commissioner, 454 F.3d 1050 (9th Cir. 2006).)  The Court so concludes because Micah Lewis's statements regarding his mother's toilet activities are, in fact, not consistent with Plaintiff's own testimony concerning this matter.  During the hearing, Plaintiff was asked about her daily activities during an average eight-hour day, defined as from 8:00 or 9:00 in the morning until 5:00 in the evening. (AR 25.) Plaintiff stated that during such a period of time, she would be on her feet for three hours, lying down on a bed or sofa for three or four hours, on the toilet for two hours, and, when she gets up, it is to go to the bathroom. (AR 25-27.)  Thus, according to Plaintiff, she would be on the toilet for two hours during the eight or nine hour daylight period, and would be otherwise standing up or lying down. This calculation certainly does not comport with that of her son, who indicated that she must remain on the toilet for hours at a time, and often uses the toilet.  Further, according to Micah Lewis, Plaintiff is able to complete the preparation of meals with several courses (AR 146), do cleaning and laundry for about three hours every other day, and goes out shopping several times a month for a few hours. (AR 146-147.)

    The statements of Micah Lewis do not parrot those of Plaintiff, but in important respects contradict Plaintiff's own description of her daily activities.  Presumably, Plaintiff has a better idea of what she does during the day than does her son.  Consequently, the Court fails to note any significance in the ALJ's rejection of Micah Lewis's statements, and if any error was committed, it was clearly harmless.
//
//

**II**

**THE ALJ DID NOT IMPROPERLY IGNORE ASSERTED SIDE EFFECTS**

**FROM MEDICATIONS**

In Plaintiff's second issue, she asserts that the record indicates that she takes Lexapro for depression, which causes her to be sleepy (citing AR 125); that she takes Vicodin, which causes vision change (citing AR 158); and that in a medication visit form, her treating psychiatrist noted that she experiences daytime grogginess (citing AR 340). (JS at 8.)  Plaintiff asserts that the ALJ erred in failing to discuss side effects of medication, which he was required to do pursuant to Social Security Ruling ("SSR") 96-7p, and 20 C.F.R. §§404.1529(c)(3)(iv), 416.929(c)(3)(iv).

Plaintiff's allegation of side effects from medication is, effectively, contradicted by her own inconsistent reporting.  For example, in her initial disability report of April 25, 2006, she indicated she suffers sleepiness from Lexapro (AR 125); however, in a subsequent disability report of October 11, 2006, she denied having any side effects from this drug. (AR 158.)  Further, no such side effects are documented in her treatment records. (AR 256-261.)  Where there is no objective evidence to support an allegation of side effects of medication, the issue need not be considered. (See Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002).)

With regard to alleged side effects of Vicodin, Plaintiff failed to identify them.  Although she was prescribed Vicodin according to her treatment records, she never complained of any vision change.  For example, she had a consultative examination ("CE") with Dr. Lynn, in which she identified Vicodin as one of her medications (AR 213) but made no complaint of side effects.

1    Finally, with regard to allegations of daytime grogginess,
2 Plaintiff has not alleged, nor do the medical records indicate what
3 might have caused such an alleged side effect.  In one treatment
4 record on November 15, 2007, there is such an allegation, but no
5 indication of its causation. (AR 340.)  It is a fair inference from
6 this particular record that she suffered grogginess because of her
7 discontinuation of taking medications a week earlier. (AR 340.)  On
8 December 20, 2007, her treatment records show no medication side
9 effects. (AR 339.)

   For the foregoing reasons, the Court finds no error with regard to the ALJ's failure to address any alleged side effects of medication.

### III

### **THE ALJ DID NOT FAIL TO PROPERLY CONSIDER THE OPINION**
### **OF PLAINTIFF'S TREATING PSYCHIATRIST**

In Plaintiff's third issue, she asserts that the ALJ failed to properly account for an October 18, 2006 evaluation of Dr. Donna Barrozo, her treating psychiatrist at the San Bernardino County Department of Behavioral Health ("SBCDBH").  Plaintiff notes that Dr. Barrozo determined that she has severe dysfunction rating, that she feels anxious and depressed and is unable to function with daily living. (JS at 12, citing AR 249.)

In response, the Commissioner asserts that the report in question was issued on February 4, 2005, not October 18, 2006, and therefore predates the relevant time period in this case, which is April 26, 2006, the date of Plaintiff's SSI application, through June 25, 2008, the date the ALJ's decision was issued.  The Commissioner notes that

1  SSI benefits may not be paid retrospectively. (JS at 13, citing 42
2  U.S.C. §1382(c)(7); 20 C.F.R. §§416.202, 416.501 (2008).)
3      The date of Dr. Barrozo's report appears to be March 17, 2005,
4  noted as the date the report was signed.  The plan effective date is
5  February 4, 2005. (AR 249.)  Nevertheless, March 17, 2005 still
6  predates, by over one year, the date of Plaintiff's SSI application.
7  Plaintiff does not controvert the Commissioner's argument that the
8  evidence is irrelevant because of the date of issuance of Dr.
9  Barrozo's report. (See JS at 14.)  Instead, Plaintiff argues that the
10 Global Assessment of Functioning ("GAF") score of 60 assessed by Dr.
11 Barrozo in this report should have been considered.  The Court sees no
12 need to discuss this evidence, as it concludes, consistent with the
13 Commissioner's argument, that the evidence is not relevant because it
14 predates the SSI application.  Further, just prior to the application
15 date, on April 13, 2006, Dr. Barrozo reported that Plaintiff's mood
16 symptoms were in fact controlled with treatment, and Dr. Barrozo only
17 required treatment on a monthly basis. (AR 248.)  While this evidence
18 also predates the application period, it is only by a period of two
19 weeks, and thus would seem to be more indicative of Plaintiff's mental
20 health and condition at the time the application was filed.
21     For the foregoing reasons, the Court finds no merit in
22 Plaintiff's third issue.
23 //
24 //
25 //
26 //
27 //
28 //

## IV

## **THE ALJ DID NOT IMPROPERLY REJECT OPINIONS**

## **BY PLAINTIFF'S TREATING CLINICIANS**

In Plaintiff's fourth issue, she contends that the ALJ failed to properly evaluate the opinions rendered by Lawrence Vaughn, MHS (Master of Health Science), and of Joni Renbarger, M.A., Psy.D. Mr. Vaughn completed a "check-off" form on July 9, 2007, entitled "Work Capacity Evaluation (Mental)." The source of this form is not provided. In the JS, Plaintiff correctly summarizes the limitations assessed by Mr. Vaughn with regard to various mental functions. The ALJ rejected Mr. Vaughn's conclusions as set forth in the check-off form, finding that there were no laboratory or clinical findings to support the opinion, and that it was inconsistent with the findings of a psychiatric consultative examiner ("CE") and the State Agency review psychiatrist, who concluded that Plaintiff had no psychiatric limitations. (See AR at 52.)

While Plaintiff asserts that Mr. Vaughn did provide significant findings, neither the Commissioner nor the Court has found any treatment records or objective testing which would serve to corroborate Mr. Vaughn's conclusions. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). Moreover, Plaintiff did, on August 11, 2006, receive a complete psychiatric evaluation from Dr. Smith, a board-eligible psychiatrist. (AR 225-231.) After performing her examination of Plaintiff, Dr. Smith found no impairments in the requisite areas of mental functioning which are relevant to a disability analysis. (AR 230.) Clearly, the ALJ was entitled to rely upon the reports of an examining psychiatrist based on independent clinical findings. See Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).

8

1    With regard to the ALJ's rejection of Ms. Renbarger's findings,
2 again, Ms. Renbarger treated Plaintiff in 2004, approximately two
3 years before the SSI application date.  The same reasons the Court has
4 relied upon with regard to the legitimacy of the ALJ's rejection of
5 Dr. Barrozo's opinion apply to its analysis of the ALJ's rejection of
6 Ms. Renbarger's opinions.
7    For the foregoing reasons, the Court finds no error with regard
8 to the fourth issue.

**V**

**THE ALJ DID NOT POSE AN INCOMPLETE HYPOTHETICAL**

**QUESTION TO THE VOCATIONAL EXPERT**

   In Plaintiff's final issue, she contends that the ALJ posed an incomplete hypothetical question at the hearing to the vocational expert ("VE").  Specifically, Plaintiff asserts error because none of the hypothetical questions included any mental limitations, nor did they include any of the functional limitations assessed by Mr. Vaughn (see discussion of Issue IV).  Finally, Plaintiff asserts that the ALJ's failure to include in the hypothetical any mention of side effects from medications was erroneous.

   Clearly, any questions posed to a VE must set forth all of the particular limitations and restrictions which are found to exist.  See Embry v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988).  But here, the Court has already disposed of Plaintiff's complaints with regard to failure to consider the conclusions of Dr. Barrozo and of Mr. Vaughn, and concerning alleged side effects of medication.  The Court has found none of these to be substantiated or relevant, and therefore, it is clear that there was no requirement to include any such limitations in

9

a hypothetical question posed to the VE.

The decision of the ALJ will be affirmed. The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: July 8, 2009              /s/
                                 VICTOR B. KENTON
                                 UNITED STATES MAGISTRATE JUDGE